**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IAN STEPHENS and KASSIDY STEPHENS,<br><br>Plaintiffs,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC, d/b/a Lowe's Home Improvement Store No. 1500,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25-cv-00387-SH |

**OPINION AND ORDER**

Before the Court is Plaintiffs' motion for leave to serve their expert reports out of time.

The Court finds Plaintiffs have shown good cause and excusable neglect for serving the report of Ryan Radebach one day late. Plaintiffs' counsel attempted to serve the report on the deadline and was thwarted by e-mail size restrictions.

The Court does not find that Plaintiffs have shown either good cause or excusable neglect for the delay in serving the report of Lon Huff. It appears that Plaintiffs have had all the discovery needed for completion of that report for at least four months, if not longer. The disputes over written discovery and the site visit have nothing to do with Huff's report, which relates to Ian Stephens' future damages. However, the Court finds the lateness of the report will not bar its use under Rule 37, as the Court can offer Defendant a brief extension that avoids harm. Defendant's remaining complaints about the inadequacies of Huff's report are more appropriately addressed in a motion to strike.

## Background

This simple slip-and-fall case has been actively litigated for over a year. On September 3, 2025, the Court entered its first scheduling order, allowing the parties over four months of discovery and setting the expert disclosure deadline for December 22, 2025. (Dkt. No. 17.)

In January 2026, after the expert deadline had passed, the parties asked to extend the discovery cutoff and other deadlines by an additional three months. (Dkt. No. 21.) The parties did not seek to reinstate the expired expert disclosure deadline. (Dk. No. 21 at 2.) The Court granted the three-month extension. (Dkt. No. 22.)

In March 2026, the parties also filed a discovery status report where Plaintiffs complained that Defendant's written discovery responses were deficient. (Dkt. No. 24 at 2.) The parties stated they were conferring and would seek the Court's guidance if they were unable to resolve their disputes after supplementation. (*Id.*)

In April 2026, a week before the discovery cutoff, the parties again sought a three-month extension of discovery, noting Defendant's need to obtain authenticated medical records and then conduct Plaintiffs' depositions in May. (Dkt. No. 25 at 1.[1]) The parties also cited Plaintiffs' need to conduct expert site inspections and prepare expert reports (*id.* at 1–2)—despite the expert report deadline having expired months earlier. The Court again granted the parties' three-month extension. (Dkt. No. 26.)

In July 2026, with the newest discovery cutoff fast approaching, the parties asked for another three months of discovery. (Dkt. No. 32.) The parties indicated they were

[1] Page numbers refer to those in the court-provided header.

working together in good faith on the completion of expert disclosures and discovery. (*Id.* at 1.) The Court again granted an extension. (Dkt. No. 34.)

Then, on August 20, 2026, the parties filed a discovery joint status report in which Plaintiffs raised a ream of complaints about Defendant's written discovery production. (Dkt. No. 36.) The report also noted that Plaintiffs had identified three expert witnesses, who had not yet been deposed, because they had not yet provided expert reports. (*Id.* at 5–6.) Plaintiffs asserted they could not complete expert analysis while Defendant continued to withhold documents regarding "the premises condition, water intrusion, awning and drainage systems, maintenance, inspections, repairs, safety procedures, prior incidents and personnel responsibilities." (*Id.* at 6.) The Court immediately set the case for status hearing, after which the Court ordered the parties to confer regarding any outstanding discovery issues. (Dkt. Nos. 37–38.) The Court further set a briefing schedule for any motions to compel and reinstated the long-expired deadlines for expert disclosures at September 25, 2026. (Dkt. No. 38.)

Plaintiffs filed the expected motion to compel, and the Court held a hearing on September 11, 2026. (Dkt. Nos. 39, 45.) The Court denied much of Plaintiffs' motion but did order some additional historical production relating to the property where Ian Stephens fell. (Dkt. No. 45.) The Court further stated the schedule would remain in place if Defendant produced the additional documents and allowed Plaintiffs' expert site visit by September 18, 2026. (*Id.*)

The day before the site visit deadline, Plaintiffs moved to extend it and the expert disclosure deadline—noting that their expert was no longer available for the September 18th inspection by the time the parties agreed to that date. (Dkt. No. 46 at 4.) The Court immediately set Plaintiffs' motion for hearing and confirmed a date on which the parties

and Plaintiffs' site expert were available. (Dkt. Nos. 47–48.) The Court then set a firm date for the site inspection and expert disclosures, and moved the discovery cutoff to November 2, 2026. (Dkt. No. 49.) At this point, the parties were allocated 14 months for discovery in this simple slip-and-fall case.

On the deadline for Plaintiffs' expert disclosures, October 5, 2026, Plaintiffs' counsel attempted to serve the expert report of their causation expert, Ryan J. Radebach. (Dkt. No. 50-2.) Radebach was the expert who needed the site inspection that caused the prior delays. (Dkt. No. 50 at 4.) The e-mail, however, was too large and bounced. (Dkt. No. 50-3.) So, the next day, Plaintiffs provided a link to allow Defendant to download the report. (*Id.*)

Then, on October 9, 2026, Plaintiffs unilaterally served a report from their damages expert, Lon Huff. (Dkt. No. 50-5.) Huff's report relies in part on a report from one of Plaintiffs' other experts, which was delivered in June. (Dkt. No. 50.) The report appears to have nothing to do with the condition at the site where Ian Stephens fell or any of the discovery ordered by the Court. (*See* Dkt. No. 53-1 at 3–12.) Plaintiffs offer no explanation for the lateness of this report, other than to state it had been expected in August of 2026; Plaintiffs' counsel had left a voicemail with the expert near the end of September; at some point, Huff told counsel the delay was due to a "staff shortage"; Huff provided the report to counsel two days after the deadline; and counsel's computer problems caused another two-day delay in serving the report on opposing counsel. (Dkt. No. 50 at 10.)

Plaintiffs now seek leave to excuse the service of these two reports out of time. (Dkt. No. 50.)

## Analysis

### I. Good Cause and Excusable Neglect

When a party seeks to extend a deadline before it has expired, the Court may—for good cause—grant the extension. Fed. R. Civ. P. 6(b)(1)(A). If the motion is made after the deadline has expired, the party seeking the extension must also show that they "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

Excusable neglect "is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Lopez v. Cantex Health Care Centers II, LLC*, No. 23-2038, 2023 WL 7321637, at *3 (10th Cir. Nov. 7, 2023) (unpublished) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)).[2] Factors considered in deciding whether there is excusable neglect include: "[1] the danger of prejudice to the non-moving party, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017) (citation modified). "[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable." *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004).

Good cause, meanwhile, requires the movant "to show the deadline cannot be met despite the movant's diligent efforts," *Utah Republican Party v. Herbert*, 678 F. App'x 697, 701 (10th Cir. 2017) (citation modified).

---

[2] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

## II. Radebach: Plaintiffs Have Shown Good Cause & Excusable Neglect

Plaintiffs have shown good cause and excusable neglect to justify extending the disclosure deadline one day for Radebach, the causation expert. Plaintiffs attempted to serve the report on the day it was due. While counsel should have immediately seen the undeliverable response, he has adequately explained his failure to do so. The Court will grant the motion to extend the disclosure deadline for Radebach.

## III. Huff: Plaintiffs Have Not Shown Good Cause or Excusable Neglect

Plaintiffs have not, however, made the required showing as to Huff, the damages expert. As for excusable neglect, Plaintiffs fail on the third, most important factor, fault. Parties are expected to enter into contractual arrangements with their experts that allow the parties to meet their court-ordered deadlines. As noted above, Huff had all the information he needed to prepare a report by at least June. Plaintiffs knew in August that the report had not been received as expected, yet counsel waited a month to leave a voicemail with the expert. Meanwhile, the Court had extended the report deadline—to allow <u>another</u> expert time to conduct a site visit. Even with this, Huff's report was not delivered to Plaintiffs until two days after that deadline.

The only explanation offered is that "Huff advised that the delay in completing his report resulted from a staff shortage in his office." (Dkt. No. 50 at 10.) If Huff told Plaintiffs before the deadline that he would not be able to meet it, then Plaintiffs should have filed an extension motion before the deadline. Plaintiffs do not assert that Huff promised—despite the delays—to provide the report before October 5th and then, despite counsel's best efforts, did not do so. Plaintiffs have not shown the diligence required for good cause, nor have they shown that the reason for the delay was outside their reasonable

control. Both good cause and excusable neglect are lacking, and Plaintiffs are not entitled to an extension of the expert report deadline for Huff.

## IV. Huff's Report May Be Used Anyway

Despite Plaintiffs' lack of diligence, the mere delay in providing it does not necessarily mean it cannot be used in this case. When a party fails to provide required expert disclosures, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiffs preemptively argue that Huff's expert report should not be excluded merely because it was served four days late.

The Tenth Circuit has identified four factors to be considered in determining whether a failure to disclose under Rule 26(a) is harmless: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Here, but for the Court's ability to extend interim dates in the upcoming schedule, Plaintiffs' late disclosure would not be harmless. There is surprise; while Huff's identity has long been known, his opinions have not. There is prejudice; Defendant would have little over a week to depose Huff and prepare a rebuttal report under the current schedule. There is an inability to cure; Plaintiffs cannot alter the court-imposed schedule. And while Plaintiffs have not apparently acted in bad faith, their lack of diligence is bordering on willfulness at this point.

But the Court can avoid the prejudice and provide a cure with a simple extension of upcoming deadlines and put Defendant back in the same position it expected to be in

on October 5th. The Court will extend deadlines for rebuttal disclosures, the discovery cutoff, and the dispositive motions deadline.

Defendant notes that there are additional issues with Huff's report, including that the late-served report does not comply with the requirements of Rule 26(a)(2)(B) and is otherwise deficient. (Dkt. No. 53 at 7–8.) The Court's ruling in this order relate only to the effect of Huff's report being four days late and not to any other deficiencies. Other deficiencies are more appropriately addressed in a motion to strike or exclude the report, which Defendant remains free to file.

IT IS THEREFORE ORDERED that *Plaintiffs' Motion for Leave to Serve Expert Reports Out of Time and to Deem Them Timely Served, with Equal Extension of Defendant's Rebuttal-Expert Deadline* (Dkt. No. 50) is GRANTED IN PART and DENIED IN PART. The deadline for Plaintiffs' expert disclosures as to causation expert, Ryan J. Radebach, is extended to October 6, 2026. The deadline is not otherwise extended. The testimony of Plaintiffs' damages expert, Lon Huff, will not be excluded merely because his report was four days late. Instead, the Court will extend the deadline for Defendant's rebuttal expert disclosures to two weeks from today and will extend the discovery and dispositive/Daubert motions deadlines accordingly. A Fifth Amended Scheduling Order will issue.

ORDERED this 15th day of October, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT